IN THE UNITED STATES DISTRICT
COURT FOR THE NORTHERN DISTRICT
OF ILLINOIS EASTERN DIVISION

| | |
|---|---|
| ED BELL, <br><br> Plaintiff, <br><br> v. <br><br> WEXFORD HEALTH SOURCE, INC., GHALIAH OBAISI, Executor of the Estate of Dr. Saleh Obaisi, and DR. R. ELAZEGUI, <br><br> Defendants. | Case No. 1:15-cv-08569 <br><br> Judge Charles R. Norgle |

## ORDER

Plaintiff's motion for preliminary injunction [116] is denied.

## MEMORANDUM OPINION

Plaintiff Ed Bell, an inmate at the Illinois Department of Corrections, Stateville Correctional Center, Joliet, Illinois ("Stateville"), brings this lawsuit under Section 1983 of the Civil Rights Act, 42 U.S.C. § 1983, to recover damages for alleged inadequate treatment he has been provided while in custody at Stateville. Plaintiff alleges that Defendants[1] deprived him of his Eighth Amendment right to be free from cruel and unusual punishment by repeatedly acting with deliberate indifference to his severe and constant stomach pain, nausea, vomiting, and weight loss. Plaintiff now moves for a preliminary injunction pursuant to Federal Rule of Civil Procedure 65, asking that the Court require Defendants to "facilitate, in a timely manner, appropriate medical

---

[1] According to Plaintiff's complaint: (1) Wexford Health Source, Inc. ("Wexford") has contracted to provide medical services at Stateville and other penal facilities to provide medical care to inmates; (2) Ghaliah Obaisi is the Executor of the Estate of Dr. Saleh Obaisi, who was employed by Wexford, provided medical services to Plaintiff, and died in December 2017; (3) and Dr. Elazegui is or was employed by Wexford and provided medical services to Plaintiff. Dkt. 53 at 2-3.

1

care and follow-up treatment for Plaintiff's condition." Dkt. 116 at 2. For the following reasons, the motion is denied.

## I. BACKGROUND

Plaintiff attaches with his motion his own affidavit, stating his personal knowledge of the following facts. Dkt. 116-2 at 2-5. According to Plaintiff, he has experienced stomach pain, nausea, vomiting, and weight loss since February 2014, and these symptoms have been constant and frequently severe. Id. at 2. In 2014, based on Plaintiff's complaints, Defendants approved gallbladder removal surgery. Plaintiff's gallbladder was removed on February 16, 2015 at the University of Illinois Hospital ("UIC"). Id. at 3. Plaintiff states that UIC recommended he return to UIC for post-surgery follow-up, but was not sent back to UIC for the follow-up until December 4, 2015. Id. In the interim period, says Plaintiff, he submitted five written grievances to Stateville complaining about the symptoms and seeking follow-up evaluation at UIC. Id. During 2015, he "frequently visited the [Health Care Unit at Stateville ("HCU")] and sought treatment." Id. According to Plaintiff, at his December 4, 2015 examination UIC noted that he had lost 25 pounds and recommended he see a gastroenterologist, but he was not sent to a gastroenterologist until October 5, 2016. Id. Plaintiff says he submitted two more written grievances to Stateville in 2016, seeking to be seen by a gastroenterologist. Id. A gastroenterologist subsequently recommended several tests—an Upper GI Endoscopy and a colonoscopy—which were performed on January 3, 2017. Id at 4. Then, says Plaintiff, on January 4, 2017, Dr. Obaisi "finally prescribed" a bland diet "for the first time" and recommended follow-up GI tests in eight weeks. Id. However, says Plaintiff, he was not sent for follow-up GI tests until October 24, 2017, and in 2017 he submitted three more written grievances to Stateville. Id. Finally, says Plaintiff, the follow-up tests revealed

2

he possibly had Barrett's Esophagus,[2] and he subsequently got a urology evaluation. Allegedly, on seven different occasions in 2018 and four different occasions in 2019, Plaintiff was not seen at the HCU due to "no provider," "time constraints," or "scheduled in error." Id. at 4-5. Plaintiff claims that his symptoms are getting worse and that he has had severe constipation since his gallbladder surgery, with consistent pain in the lower right side of his stomach and constant constipation that "is about 8 on a scale of 10 when I attempt to have a bowel movement." Id. at 5. Plaintiff expounds on this alleged history in his statement of facts, citing to medical records and his Grievances to Stateville. See Dkt. 116-1 at 1-8; Dkt. 116-2 at 6-58 (Exhibits 2-4); Dkt. 116-3 at 1-61 (Exhibits 5-7); Dkt. 116-4 at 1-35 (Exhibits 8-10).

Plaintiff argues that as a result of Defendants' acts and omissions described above, Plaintiff has suffered significant delays in obtaining effective treatment, diagnostic testing, surgical follow-up, referrals, and effective medication. He claims that Defendants acted with deliberate indifference to his serious medical needs by consistently failing to provide effective medical treatment or symptomatic relief over a seven year period, causing him to needlessly suffer continuing pain and mental anguish.

Defendants also document Plaintiff's medical history at length, and attach voluminous records as well as an affidavit from the current medical director at Stateville, Dr. Henze. Dkt. 121 at 2-14 (describing all tests, labs and x-rays as normal besides the gallbladder results, with Plaintiff's weight fluctuating between 200 and 215 and no acute objective findings related to the symptoms); see Dkt. 121-1 (Stateville documents), 121-2 (UIC documents), 121-3 (Dr. Henze affidavit). Defendants state that Plaintiff "has received continual and abundant care" while incarcerated at Stateville. Dkt. 121 at 2. They emphasize that all labs for Plaintiff have returned as

---

[2] According to Plaintiff, Barrett's Esophagus is "a condition caused by repeated exposure of stomach acid to the esophagus." Dkt. 116-1 at 7.

3

normal, all tests done on Plaintiff have returned negative, his weight has in fact remained stable,[3] and he has been prescribed medication including Protonix, Bentyl, Reglan, Prilosec, Lactulose, Tylenol, Pepcid, Mylanta, Dicyclon, and fiber. Because Plaintiff has received "adequate medical care," say Defendants, his motion should be denied. Johnson v. Doughty, 433 F.3d 1001, 1013 (7th Cir. 2006).

## II. STANDARD

"To obtain a preliminary injunction, the moving party must demonstrate a reasonable likelihood of success on the merits, no adequate remedy at law, and irreparable harm absent the injunction. If it makes this threshold showing, the district court weighs the balance of harm to the parties if the injunction is granted or denied and also evaluates the effect of an injunction on the public interest. The strength of the moving party's likelihood of success on the merits affects the balance of harms. The more likely it is that the moving party will win its case on the merits, the less the balance of harms need weigh in its favor." Planned Parenthood of Indiana, Inc. v. Comm'r of Indiana State Dep't Health, 699 F.3d 962, 972 (7th Cir. 2012) (cleaned up).

"A preliminary injunction is an extraordinary remedy never awarded as of right. In each case, courts must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 24 (2008) (cleaned up). "[A]s an 'equitable, interlocutory form of relief, a preliminary injunction is an exercise of a very far-reaching power, never to be indulged in except in a case *clearly demanding it*.'" Bidi Vapor, LLC v. Vaperz LLC, No. 21 C 1430, 2021 WL 2433642, at *2 (N.D. Ill. June 15, 2021) (emphasis in original) (quoting Valencia v. City of Springfield, 883 F.3d 959, 965 (7th Cir. 2018)). A preliminary injunction is an "extraordinary and

---

[3] For example, according to Defendants, "Plaintiff advised that he had lost 30lb weight loss, though his weight on this encounter was . . . 214 lbs" and his weight was previously 210 lbs. See Dkt. 121 at 2.

4

drastic remedy"; mandatory injunctions, which require an affirmative act by the nonmovant, are rarely issued, and interlocutory mandatory injunctions are even more rarely issued. Bidi Vapor, 2021 WL 2433642 at *2.

### III. DISCUSSION

The Court holds that Plaintiff does not have a reasonable likelihood of success on the merits. "To state an Eighth Amendment claim based on deficient medical care, a plaintiff must allege an objectively serious medical condition and an official's deliberate indifference to that condition." Perez v. Fenoglio, 792 F.3d 768, 776 (7th Cir. 2015). Deliberate indifference reflects a mental state between negligence and purpose and is properly equated with reckless disregard. Id. at 777. The first question is whether Plaintiff alleges an objectively serious medical condition. "[T]here is no requirement that a prisoner provide 'objective' evidence of his pain and suffering" because "self-reporting is often the only indicator a doctor has of a patient's condition." Greeno v. Daley, 414 F.3d 645, 655 (7th Cir. 2005). Plaintiff urges that his condition qualifies as objectively serious because it "would result in further significant injury or unnecessary and wanton infliction of pain if not treated." Gayton v. McCoy, 593 F.3d 610, 620 (7th Cir. 2010). A medical condition "need not be life-threatening" to be serious, id., and the "standard for conditions to be objectively 'serious' does not create a high bar." Flournoy v. Ghosh, 881 F. Supp. 2d 980, 987 (N.D. Ill. 2012).

The Court doubts that Plaintiff's condition is objectively serious, and finds he is not reasonably likely to succeed in meeting this burden. First, stomach pain, even coupled with vomiting or constipation, does not always rise to the level of a serious medical need. Walker v. McGlorn, No. 17-CV-933-NJR-RJD, 2019 WL 2360906, at *3 (S.D. Ill. May 13, 2019) (listing cases). Here, Plaintiff provides no records from July 2019 to the present, but only his affidavit, so there is no medical record evidence of his alleged current condition. Dkt. 121-3 at 3-4. Dr. Henze,

5

the current medical director at Stateville, states that Plaintiff is extremely fit, regularly lifts weights in the yard, and has not complained recently of any abdominal issues. Dkt. 121-3. Plaintiff in his affidavit complains of symptoms like nausea and vomiting, but his own allegations reveal no acute findings, and he takes medication that eases those symptoms. It appears, as Defendants state, that Plaintiff suffers from chronic intermittent constipation that does not "significantly affect[ his] daily activities" and is not objectively serious. Gutierrez v. Peters, 111 F.3d 1364, 1373 (7th Cir. 1997).[4]

But even accepting that Plaintiff's condition is objectively serious, the Court finds that Plaintiff is not reasonably likely to succeed in establishing that Defendants acted with deliberate indifference. "Deliberate indifference occurs when a defendant realizes that a substantial risk of serious harm to a prisoner exists, but then disregards that risk." Perez v. Fenoglio, 792 F.3d 768, 776 (7th Cir. 2015) (examples include administering blatantly inappropriate treatment, acting contrary to the recommendation of specialists, or delaying treatment for non-medical reasons thereby exacerbating pain and suffering). "[D]eliberate indifference indicates a culpable state of mind, something akin to criminal recklessness, which requires that the defendant be aware of and disregard an excessive risk of serious harm to the inmate." Norfleet v. Webster, 439 F.3d 392, 397 (7th Cir. 2006). Even gross negligence does not constitute deliberate indifference. Archie v. City of Racine, 847 F.2d 1211, 1219 (7th Cir. 1988). Here, Plaintiff has received abundant care. Plaintiff argues that two specific follow-up appointments were delayed for months, and that Defendants cannot shirk responsibility for those delays by blaming UIC for not scheduling the appointments sooner. Dkt. 121 at 21 (Defendants say they got the referral approved and then "awaited scheduling from UIC"); Id. (Defendants argue they were not "in control of the scheduling

---

[4] Defendants point out that the medical record evidence shows that Plaintiff does not suffer from Barrett's Esophagus, in contrast to Plaintiff's contention, see Dkt. 116-2 at 4 (stating he has "possible Barrett's Esophagus"). As Defendants state, Plaintiff's EGD and colonoscopy were negative, and additional imaging of his upper GI tract revealed "Normal esophagus." Dkt. 121 at 21 (quoting the record that "there was no evidence of Barrett's esophagus") (cleaned up).

of UIC"). But Plaintiff does not "offer verifying medical evidence that the delay (rather than the inmate's underlying condition) caused some degree of harm." Williams v. Liefer, 491 F.3d 710, 715 (7th Cir. 2007) ("a plaintiff must offer medical evidence that tends to confirm or corroborate a claim that the delay was detrimental"). "He also must show a causal link between his injury and the defendant's conduct." Kyles v. Williams, No. 11-CV-05216, 2015 WL 5461566, at *4 (N.D. Ill. Sept. 17, 2015) (citing Jackson v. Pollion, 733 F.3d 786, 790 (7th Cir.2013)). Plaintiff ultimately got the follow-up appointments, and further tests were conducted, but Plaintiff's problem allegedly persists. Simply put, there is no evidence that any delay negatively impacted Plaintiff, so he is not likely to succeed on the merits.

In addition, Plaintiff was regularly seen by the Health Care Unit and was prescribed various medications, even while waiting for follow-up appointments. He ultimately received numerous surgeries and tests. He has been tested by specialists, including gastroenterologists and urologists, and those tests have not revealed any diagnosable problems but rather found Plaintiff's health to be normal. Dkt. 121 at 21-22 (citing record of normal esophagus, CT scan, EGD, and colonoscopy). Plaintiff is still regularly seen by the Health Care Unit. He has received treatment for his symptoms by a number of providers through a number of methods, including fiber, medical laxatives, and other medications. See generally Dkt. 121-3. All of this undermines Plaintiff's assertion that Defendants have "subjectively" disregarded an excessive risk of harm to Plaintiff. Whiting v. Wexford Health Sources, Inc., 839 F.3d 658, 662 (7th Cir. 2016) ("inadvertent failure to provide adequate medical care" does not violate the Eighth Amendment). The Court has no competent evidence to demonstrate that some superior course of care was or is available outside of the care that has and is being provided to Plaintiff already. Plaintiff may not be pain-free, but the Eighth Amendment does not require medical personnel to alleviate all of Plaintiff's pain. Snipes v. DeTella, 95 F.3d 586, 592 (7th Cir. 1996). Plaintiff is not likely to show that his treatment

was "such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that [Defendants] did not base the decision on such a judgment." Petties v. Carter, 836 F.3d 722, 729 (7th Cir. 2016). Accordingly, the Court finds that Plaintiff does not have a reasonable likelihood of success on the merits, as he is not likely to establish that Defendants acted with deliberate indifference.

Plaintiff fails to make a threshold showing of reasonable likelihood of success on the merits, so the Court need not weigh the balance of harms or consider the public interest. Still, the Court notes that the Seventh Circuit has stated that interlocutory injunctions should be approached with caution and that "a prison physician, as the inmate's acting primary care doctor, is free to make his own, independent medical determination as to the necessity of certain treatments or medications, so long as the determination is based on the physician's professional judgment and does not go against accepted professional standards." Holloway v. Delaware Cty. Sheriff, 700 F.3d 1063, 1074 (7th Cir. 2012). This demonstrates the importance of the public interest in maintaining the autonomy of medical personnel in the correctional context and not encouraging judicial intervention except in rare circumstances. There is also good reason to maintain institutional control and manage the Court's docket. True, "Illinois taxpayers have a vested interest in ensuring that the constitutional rights of its citizens are protected." Foster v. Ghosh, 4 F. Supp. 3d 974, 984 (N.D. Ill. 2013). But as discussed, Plaintiff is not likely to show that his constitutional rights were violated; he offers no verifiable medical evidence that supports his claim. The balance of harms and the public interest are therefore not in his favor. And because he is not likely to succeed on the merits, for Plaintiff's motion to succeed, he would need to show instead that the balance of harms weighs heavily in his favor. Planned Parenthood of Indiana, Inc. v. Comm'r of Indiana State Dep't Health, 699 F.3d 962, 972 (7th Cir. 2012) ("The strength of the moving party's likelihood of success on the merits affects the balance of harms."). The motion is denied.

The motion also fails because it does not comply with the Prisoner Litigation Reform Act ("PLRA"), which requires that a preliminary injunction "be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm." 18 U.S.C. § 3626(a)(2). Plaintiff's request for relief is too vague to be compatible with the PLRA. He does not ask, for instance, to be referred to a specific specialist. Foster v. Ghosh, 4 F. Supp. 3d 974, 984 (N.D. Ill. 2013) (granting preliminary injunction to get cataracts evaluated by an ophthalmologist). He asks instead for "appropriate treatment," but the record does not identify that he has any acute medical condition, nor does Plaintiff or the record offer any viable, alternative treatment. Collignon v. Milwaukee Cty., 163 F.3d 982, 990 (7th Cir. 1998) ("the opinion that such an alternative treatment plan would have been more beneficial or even acceptable . . . is pure speculation"). The relief Plaintiff requests is therefore not narrowly drawn in a way that comports with the PLRA, and the motion fails for that reason as well.[5]

"Mandatory preliminary injunctions . . . are ordinarily cautiously viewed and sparingly issued." Mays v. Dart, 974 F.3d 810, 818 (7th Cir. 2020) (cleaned up). Plaintiff here may disagree with his providers as to treatment, but a "prisoner may not dictate his own course of treatment." Page v. Obaisi, 318 F. Supp. 3d 1094, 1103 (N.D. Ill. 2018). For some individuals, appearing to include Plaintiff, a chronic condition with unknown etiology is an unfortunate reality of life. Medical science has its limits, and "an inability to effect a final cure does not necessarily support a finding of deliberate indifference." Dobbey v. Liping Zhang, No. 11 C 2374, 2013 WL 4838916, at *8 (N.D. Ill. Sept. 10, 2013). Because Plaintiff has not carried his burden of persuasion "by a

---

[5] Defendants also argue that (1) Plaintiff fails to articulate any Monell claim, or policy allegations, against Wexford, as he must do to sustain a claim against it, (2) Plaintiff fails to show irreparable harm, and (3) Plaintiff fails to show that there is no adequate remedy at law besides an injunction. The Court need not address these arguments to deny the motion.

clear showing," the motion is denied. Bidi Vapor, LLC v. Vaperz LLC, No. 21 C 1430, 2021 WL 2433642, at *2 (N.D. Ill. June 15, 2021).

## IV. CONCLUSION

Plaintiff has not demonstrated a reasonable likelihood of success on the merits, as his condition is likely not objectively serious, and he is not likely to show that Defendants acted with deliberate indifference to his serious medical needs. Neither the balance of harms nor the public interest weighs in his favor. In addition, his request for relief is not narrowly drawn, as required by the Prisoner Litigation Reform Act. For these reasons, the motion is denied.

IT IS SO ORDERED.

ENTER:

CHARLES RONALD NORGLE, Judge
United States District Court

DATE: September 17, 2021